Michael BALL, C.A. Massey, D.J. McInerney, and T.G. Knierim, Plaintiffs–Appellees,

v.

INTEROCEANICA CORPORATION, Turbana Corp., M/V Potomac, her engines, boilers, tackle, etc., in rem, M/V Pocahontas, her engines, boilers, tackle, etc., in rem, and M/V Pocantico, her engines, boilers, tackle, etc., in rem, Defendants–Appellants.

No. 443, Docket 95–7421.

United States Court of Appeals, Second Circuit.

Argued Dec. 1, 1995.

Decided Dec. 1, 1995.

Joel N. Kreizman, Evans, Osborne, Kreizman and Bonney, Little Silver, N.J., for Defendants–Appellants.

Herbert B. Halberg, Beck & Halberg, New York City, for Plaintiffs–Appellees.

Before: CARDAMONE, CALABRESI, Circuit Judges, and NICKERSON, District Judge.*

PER CURIAM:

Defendants Interoceanica Corporation, Turbana Corp., M/V Potomac, M/V Pocahontas, and M/V Pocantico (collectively, "Interoceanica"), appeal from a judgment entered on November 28, 1994, in the United States District Court for the Southern District of New York (Pierre N. Leval, *Circuit Judge sitting by designation*), in favor of plaintiffs Michael Ball, C.A. Massey, D.J. McInerney, and T.G. Knierim after a bench trial based on a written record. The defendants also appeal from the district court's denial of their motion for a new trial, entered on April 12, 1995.

The plaintiffs are pilots licensed by the State of New York to navigate foreign vessels and United States vessels engaged in foreign trade in Long Island Sound. On several occasions, the plaintiffs offered their

* The Honorable Eugene H. Nickerson, Senior United States District Judge for the Eastern District of New York, sitting by designation.

services to navigate the defendants' vessels through an area in the Long Island Sound west of the Connecticut–New York border, which is bounded on both sides by New York territory. The defendant Turbana Corp., whose vessels were either coming from or going to Connecticut ports, refused plaintiffs' services and instead used Connecticut-licensed pilots for this leg of the journey.

■ The plaintiff pilots brought this action for pilotage fees pursuant to New York Navigation Law § 89–b(1) (McKinney's Supp. 1995) (providing that refusal of required pilotage services, when offered, subjects vessels and owners/agents to payment of pilotage fees). Interoceanica answered that a 1991 amendment to § 89–b did not alter the previous law under which either New York or Connecticut pilots could pilot vessels between Connecticut ports and Execution Rocks, a point in New York approximately 7.5 miles west of the Connecticut–New York border. Before November 27, 1991, that section provided as follows:

> Every ... vessel ... transiting the New York state waters of Long Island Sound ... east of Execution Rocks or Sands Point ... shall take a Long Island–Block Island Sound pilot licensed *under the authority of this article or of the laws of any other state having concurrent jurisdiction over these waters.*

N.Y.Nav.Law § 89–b(1) (McKinney's 1989) (emphasis added). The revised section deleted the language italicized above and instead added a new sentence. As amended, the section now reads:

> Every ... vessel ... transiting the New York state waters of Long Island Sound ... east of Execution Rocks or Sands Point ... shall take a Long Island–Block Island Sound pilot licensed *under the authority of this article.* Every ... vessel ... transiting the New York state waters of Long Island Sound ... east of a line running southeasterly from the mouth of the Byram River at the New York–Connecticut boundary to Oak Neck Point on Long Island shall take a pilot licensed under the authority of this article or the laws of any other state having concurrent jurisdiction over these waters.

N.Y.Nav.Law § 89–b(1) (McKinney's Supp. 1995) (emphasis added).

We agree with the district court's conclusion that, according to the clear language of the revised statute, vessels must use the services of a New York-licensed pilot when passing through New York territorial waters in the western Long Island Sound. Like the district court, we are unpersuaded by the statements of various New York officials that purport to interpret the statute to permit Connecticut pilots to navigate in the western reaches of the Long Island Sound. These interpretations flatly contradict the plain language of the statute and therefore are of little guidance in interpreting that law.

■ The district court also concluded that § 89–b does not violate the Federal Boundary Waters Act, 46 U.S.C. § 8501(b), because the waters west of the Connecticut–New York border (which are bounded by Westchester County and Long Island) constitute territorial waters of the State of New York—not boundary waters between states that are subject to the limitations of § 8501(b).

■ Because the parties had produced insufficient evidence to decide whether § 89–b, as amended, violated the dormant Commerce Clause, the district court declined to rule on that issue. 867 F.Supp. 226, 233 n. 10 (S.D.N.Y.1994). Finally, the district court rejected Interoceanica's contention that the New York pilots were required to "offer their services" pursuant to § 89–b by showing up in a pilot boat in the middle of the Sound, at the line where Connecticut pilots may no longer navigate the vessel, rather than by offering their services at the vessel while it was docked in Bridgeport. *Id.* at 233–34. In reaching that conclusion, the court observed that Interoceanica had not produced sufficient evidence that offering pilot services in the middle of the Sound was required by industry practice. *Id.*

We agree with Judge Leval's analysis of these issues. Accordingly, after consideration of all the arguments put forward by the parties, we affirm the judgment substantially for the reasons stated in the district court's opinion.

■ Interoceanica raises two further issues on appeal. It argues that the district court erred in failing to find that N.Y. Navigation Law § 89–b, if it excludes Connecticut pilots from the western waters of the Long Island Sound, violates 46 U.S.C. § 8501(c), which prohibits a state from "discriminat[ing] in the rate of pilotage ... between the vessels sailing between the ports of one State and vessels sailing between ports of different States."

Although the district court did not address this issue in its written opinion, Interoceanica's contention can be rejected out of hand. Imagine two vessels sailing to New York City from Long Island ports, one from Port Jefferson, New York, and the other from Bridgeport, Connecticut. Each vessel, if it started with a Connecticut-licensed pilot, would have to switch to a New York-licensed Sound pilot for the western waters of the Sound, and then switch again to a New York Harbor pilot for the rest of the journey. Similarly, each vessel, if it started with a New York-licensed Sound pilot, would need to switch only once: to the New York Harbor pilot. At most, such an arrangement would discriminate against *pilots* holding only a Connecticut license. It certainly does not discriminate against vessels steaming from Connecticut *ports*. Accordingly, N.Y. Navigation Law § 89–b does not violate 46 U.S.C. § 8501(c).

■ Interoceanica also challenges the district court's denial of its motion for a new trial pursuant to Rule 59(a)(2) of the Federal Rules of Civil Procedure.[1] It contends that, because the district court found the trial record to be insufficient (a) with respect to the dormant Commerce Clause issue and (b) with respect to the question of whether pilots may offer their services dockside, the court should have held a new trial at which Interoceanica could have filled the gaps in the record. It argues that this is especially necessary since the trial was based on submitted affidavits and transcripts of depositions.

■ This Court will reverse a district court's denial of a motion for new trial only if there has been an abuse of discretion. *Blissett v. Coughlin,* 66 F.3d 531, 535 (2d Cir. 1995). "[A] trial court should not grant a new trial merely because the losing party can probably present a better case on another trial." 6A JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 59.08[2], at 59–97 (2d ed. 1989); *see also* 11 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 2804, at 53 (2d ed. 1995) ("A motion for a new trial in a· nonjury case ... should be based upon manifest error of law or mistake of fact, and a judgment should not be set aside except for substantial reasons."). Furthermore, Rule 61 of the Federal Rules of Civil Procedure counsels that no error "is ground for granting a new trial ... unless refusal to take such action appears to the court inconsistent with substantial justice." We believe that the district court acted within its broad discretion when it denied Interoceanica's motion for a new trial.

■ Interoceanica argues that a new trial is required because the district court excluded or failed to consider competent evidence, *see* MOORE ET AL., *supra* ¶ 59.15[3], at 59–305; we do not find that to be the case here. The only evidence that the district court excluded was fragmentary trial testimony from a prior case in federal court, in which none of the present parties was involved. This evidence was not submitted in conformity with the procedures to which the parties had stipulated, since the direct testimony of the witnesses was not subject to cross-examination at depositions. Furthermore, the evidence did not fit within the exception carved out by Rule 804 of the Federal Rules of Evidence (admitting hearsay testimony given at a prior hearing by an unavailable witness, where the party against whom the testimony is now offered had an opportunity and similar motive to develop the testimony by direct, cross,

---

1. According to Rule 59(a)(2):

    A new trial may be granted ... (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

or redirect examination). Accordingly, the district court's exclusion of the evidence was proper and does not warrant a new trial.[2]

 Behind Interoceanica's motion for a new trial, there seems to lie a belated objection to the form of trial used. But, in fact, both parties consented to the form of trial, and such a procedure falls within the district court's ample authority to manage the proceedings before it. The Ninth Circuit has expressly approved bench trials based on written submissions. *See, e.g., In re Adair,* 965 F.2d 777 (9th Cir.1992) (holding that the bankruptcy court's standard procedure of requiring that direct testimony be presented by written declaration, while permitting oral cross-examination and redirect in open court, offended neither due process nor Federal Rule of Evidence 611(a)—which authorizes district court to control the "mode" of presenting direct testimony); *Phonetele Inc. v. American Tel. & Tel. Co.,* 889 F.2d 224, 232 (9th Cir.1989) (affirming the district court's requirement that parties submit direct evidence in written form, while permitting parties to cross-examine adverse witnesses orally) ("The use of written testimony is an accepted and encouraged technique for shortening bench trials.") (citation omitted), *cert. denied,* 503 U.S. 914, 112 S.Ct. 1283, 117 L.Ed.2d 508 (1992); *Malone v. U.S. Postal Serv.,* 833 F.2d 128, 133 (9th Cir.1987), *cert. denied,* 488 U.S. 819, 109 S.Ct. 59, 102 L.Ed.2d 37 (1988) (upholding district court's authority to compel written testimony); *see also Eirhart v. Libbey–Owens–Ford Co.,* 996 F.2d 837, 840 (7th Cir.1993) ("Rule 52 allows for matters to be tried to the district court on a written record; we do not read the Rule to require that an evidentiary hearing be held.") (citations omitted). Like the Ninth Circuit, we approve the procedure allowing the parties to produce direct evidence from their witnesses in writing while permitting subsequent oral cross-examination—particularly when the parties agree to that procedure in advance.

## CONCLUSION

We affirm the judgment substantially for the reasons stated in the district court's opinion. *See Ball v. Interoceanica Corp.,* 867 F.Supp. 226 (S.D.N.Y.1994).

---

**2.** We have no occasion to decide what preclusive effect, if any, should be given to the district court's rulings in subsequent proceedings involving these or other parties.