In re Maria Guadalupe STEVINSON, Debtor.

David E. LEWIS, Trustee, Plaintiff–Appellee,

v.

Francisco Marquez ZERMANO and Rosa Elva de Marquez, Defendants–Appellants.

Civil Action No. 95–K–4.

United States District Court, D. Colorado.

April 15, 1996.

John B. Kusic, Denver, CO, for defendants.

Robert W. Hutchinson, Denver, CO, for plaintiff.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Defendants Franciso Marquez Zermano and Rosa Elva de Marquez appeal from a final judgment of the bankruptcy court (1) setting aside the transfer of certain real property to them by Debtor's friend, and (2) ordering recovery of the property or, in the alternative, the entry of judgment against them and Debtor's friend jointly in the amount of $109,586. The Marquezes contend the bankruptcy court denied them due process when it limited the direct testimony at trial to presubmitted written statements and misapplied the good faith defense afforded transferees who "take for value" by interpreting the term "value" in 11 U.S.C. § 550(b) too narrowly.

The parties have waived the opportunity to present oral argument, and submit the issues raised on the briefs. I have jurisdiction over this appeal under 28 U.S.C. § 158(a)(1), and affirm the bankruptcy court's order.

## I. BACKGROUND AND PROCEDURAL HISTORY

During the course of divorce proceedings that concluded in August 1989, Debtor Maria Guadalupe Stevinson was awarded the family's Lakewood, Colorado residence (the "Residence" or the "Property"). In November 1989, Stevinson transferred the Residence to Nelly A. Gonzalez. At the time, Stevinson owed money to certain creditors, including a company that had rendered expert witness services in the divorce action. She continued to live at the Residence, paying Gonzalez $300 to $350 per month in rent. Gonzalez made the monthly mortgage payments.

Gonzales transferred the Residence to the Marquezes in December 1992. For their consideration, the Marquezes made the mortgage payments and undertook to make necessary repairs.

Stevinson filed for Chapter 7 bankruptcy protection in December 1993. David E. Lewis was appointed interim trustee (the "Trustee"). The Trustee initiated an adversary proceeding to set aside both the Stevinson–Gonzalez and Gonzales–Marquez transfers, claiming the transfers were fraudulent under § 38–10–117 of the Colorado Revised Statutes and voidable under §§ 544(a), 544(b) and 550 of the Bankruptcy Code. Trial was set for September 20, 1994.

The bankruptcy court entered a scheduling order pursuant to Bankruptcy Rule 7016 on February 22, 1994. *See* Order (R. Vol. I, Tab 3). Describing the procedures for trial, the order required counsel to prepare written statements of their witnesses' direct testimony, signed by the witness under oath. *Id.* at 2, ¶ 2. It stated that witnesses would be sworn at trial and asked if their statements accurately set forth their testimony. Cross-examination and rebuttal would then be allowed "in the usual manner." *Id.* at 3.

Trial was held as scheduled on September 20, 1994, and the bankruptcy court issued its findings of fact and conclusions of law orally on the record the following day. *See* Tr. of Sept. 20 and 21, 1994 (R. Vols. II and III). The court found the Stevinson–Gonzalez transfer had been made "with the actual intent to hinder or delay creditors" and granted the relief requested as to Gonzalez, but cited a lack of proof that the Marquezes "knew or should have known" the circumstances under which they took the property

and denied relief with respect to them. *See* Tr. (R. Vol. II) at 165–69. The court did not enter a written order.

On September 30, 1994, the Trustee filed a Motion Pursuant to Rule 7059(a) and (e) asking the court to amend or otherwise reconsider its findings. After a hearing on the motion on November 22, 1994, the court granted the motion. The court agreed it had failed to make appropriate findings with respect to the Marquezes' § 550(b)(1) defense, specifically, whether they had taken the property "for value." The court found the Marquezes had failed to establish that they had taken for value, and declared the Gonzalez–Marquez transfer "null and void." The court entered a written order stating its supplemental findings on December 21, 1994. (R. Supplemental Vol. II, Tab 34). This appeal ensued.

## II. *STANDARD OF REVIEW*

In reviewing a final decision of the bankruptcy court, I review factual findings under the clearly erroneous standard and conclusions of law *de novo*. *Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540, 1543 (10th Cir. 1988).

## III. *MERITS*

### A. *Due Process*

The Marquezes assert the trial procedures imposed by the bankruptcy court denied them their right to a fair trial. Specifically, they argue the provision in the scheduling order prescribing the use of sworn written declarations in lieu of direct testimony violated Rule 43(a) of the Federal Rules of Civil Procedure (made applicable to bankruptcy proceedings by Bankruptcy Rule 9017) and deprived them of their rights to due process protected by the 14th Amendment to the United States Constitution. The argument is specious.

As an initial matter, the objection to the form of trial is untimely. The February 1994 scheduling order expressly required objections to be filed by written motion by March 7, 1994 or "no modifications w[ould] be entertained by the Court." *See* Order Pursuant to Rule 7016 (R. Vol. I, Tab 3) at 2. The

Marquezes filed no objection, nor did they object at any other time before, during or after the trial. Objections not raised or preserved in the trial court are waived on appeal. *Associated Press v. Cook*, 513 F.2d 1300, 1303 (10th Cir.1975).

■ Even assuming, *arguendo*, that the objection were timely, the bankruptcy court's procedure requiring direct testimony by declaration with the right of oral cross-examination neither violates Rule 43(a) nor infringes on the due process rights of the parties. The practice has been upheld by the Second Circuit and the Ninth Circuits as "an accepted and encouraged technique for shortening bench trials." *Ball v. Interoceanica Corp.*, 71 F.3d 73, 77 (2d Cir.1995) (quoting *Phonetele Inc. v. AT & T*, 889 F.2d 224, 232 (9th Cir.1989)); *In re Adair*, 965 F.2d 777, 779 (9th Cir.1992); *In re Geller*, 170 B.R. 183, 186–87 (Bankr.S.D.Fla.1994). *See* Russell, *Bankruptcy Evidence Manual* § 611.1 (1993). It is consistent with Rule 611(a) of the Federal Rules of Evidence, which allows the court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence." *Adair*, 965 F.2d at 779.

I agree with these courts and commentators that the bankruptcy court's standard procedure of requiring direct testimony by written declaration while permitting oral cross-examination and redirect in open court offends neither due process nor Rule 43(a)— particularly where, as here, the parties fail to object to that procedure as notified in the scheduling order.

Rule 43(a) of the Federal Rules of Civil Procedure provides, "[i]n all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by an Act of Congress or by these rules, the Federal Rules of Evidence, or other rules adopted by the Supreme Court." This provision in the 1938 rules was a restatement of the method of proof in common law actions and was intended, as part of the action to merge law and equity, to abolish the practice in patent and trademark actions and under the old Equity Rule 48 of setting out in affidavits the testimony in chief of expert witnesses

who were required to set forth in testimony their qualifications and bases before being permitted to offer an opinion. Rule 611(a) of the Federal Rules of Evidence was adopted in 1975, after Rule 43(a). It provides the necessary authority for a court to control the mode of interrogating witnesses.

Rule 702 of the Federal Rules of Evidence significantly changed the scope and mode of permitting expert testimony. Rule 703 specifically provides that the facts and data upon which an expert bases his or her opinion may be made known to the expert before a court hearing. Thus, the use of exacting hypothetical questions required by the older practice and contemplated by the subject language in Rule 43(a) was abandoned. The objection in the case at bar is based on considerations which no longer have a purpose.

The objection that requiring direct examination by declaration somehow violates due process of law is likewise without foundation. All that is necessary for a trial procedure to satisfy due process is to provide the parties with fair notice and an opportunity to submit their evidence to an impartial arbiter. A trial is not a static ritual; it is a judicial examination in accord with established procedure of issues of law or fact between parties by a court that has the authority to achieve a resulting decision capable of being enforced. The procedure may change else we would be bound to engage in conduct established by Henry II in the twelfth century. The effective functioning of courts must, of necessity, be adapted to changing circumstances. As an efficient means of managing ever increasing dockets, the bankruptcy court is well within the ambit of due process in requiring direct examination by declaration followed by the opportunity for cross-examination and redirect questioning.

B. *The Determination that the Marquezes Gave No "Value" for the Residence Under 11 U.S.C. § 550(b)(1)*

The Bankruptcy Code authorizes the trustee to avoid any transfer of property made within a year before the filing of a petition in bankruptcy if that transfer was made with the "actual intent to hinder, delay, or defraud" creditors. 11 U.S.C. § 548(a)(1). To the extent a transfer is avoided under § 548,

the trustee may recover the property transferred or the value of the property from the initial transferee, 11 U.S.C. § 550(a)(1), or any immediate transferee of the initial transferee. *Id.* § 550(a)(2). The trustee may not, however, recover under § 550(a)(2) against a transferee that "takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided." *Id.* § 550(b)(1). It is the bankruptcy court's application of § 550(b)(1) that is the subject of this appeal.

■ The Marquezes contend they gave "value" for the Residence by making the monthly mortgage payments and undertaking $10,000 in necessary repairs. Given the equity that had accrued in the Residence and the increase in its value, the bankruptcy court found this was a "sweet deal" and a "windfall" for the Marquezes that in many respects was "too good to be true." Tr. Sept. 21, 1994 (R. Vol. III) at 169. It declined to infer from this, however, that the Marquezes knew or should have known of the fraudulent nature of the earlier Stevinson–Gonzalez transfer. *Id.* Instead, it focused on the "value" element of § 550(b)(1) and concluded the Marquezes "gave up nothing and agreed to nothing" in exchange for the Residence. Supplemental Order (R. Supp. Vol. III, Tab 34) at ¶ 15.

The court rejected the contention that the mortgage payments satisfied a "present or antecedent debt" under § 550(b)(1). Such would be the case, it agreed, had the Marquezes satisfied or assumed the mortgage, but the court found they had done neither. Supplemental Order (R. Supp. Vol. III, Tab 34) at ¶¶ 17–20. "[T]here was no evidence," it concluded, "of an assumption of the loan, a release of the loan, or a satisfaction of the loan; there was nothing that would create personal liability to the transferees." *Id.* at ¶ 20.

The Marquezes assert the bankruptcy court interpreted the term "value" in § 550(b)(1) too narrowly. "Value," they argue, means "value to the transferor"—in this case, Gonzalez. Applts.' Br. at 9 (citing *Bonded Fin. Serv. v. European Am. Bank,*

838 F.2d 890 (7th Cir.1988)). They maintain "value" is not limited to the assumption of liability or the satisfaction of an antecedent debt, and can be given by means other than money. *Id.* They conclude that contrary to the findings of the bankruptcy court, the "benefits" they conferred on Gonzalez by "freeing up" her credit and undertaking to make necessary repairs to the Property constituted "value" for the purposes of § 550(b)(1). I disagree.

*Bonded* does not support the Marquezes' contention that "value" may be defined in terms of noneconomic benefits experienced by the transferor. To the contrary, the Seventh Circuit in *Bonded* imposed a standard no different from the one applied by the bankruptcy court in this case, namely, that in determining "value" under § 550(b)(1), the inquiry is on what the transferee gave up in exchange for the transfers.[1] It concluded in that case that the transferee bank had given value in exchange for a $200,000 transfer by releasing its interest in collateral securing a business loan held by the debtor. *Id.*, 838 F.2d at 896–97.

When a transferee purports to give "value" for the purposes of § 550(b)(1) by assuming obligations of the transferor, there must be an assumption of personal liability. The Fifth Circuit's opinion in *In re Still*, 963 F.2d 75, 77 (5th Cir.1992) is instructive. In *Still*, the FDIC–as–Receiver sought to invoke the § 550(b)(1) good faith defense by asserting it took the subject bank's assets "for value" because it was required to pay the bank's obligations under FIRREA. The Fifth Circuit disagreed, explaining that FIRREA only authorized the FDIC to pay or settle such obligations "to the extent funds are available." *Id.* "This is not the same as assuming a bank's obligations," the court stated. "One who 'assumes' another's liabilities becomes personally liable on them.... [and] the FDIC–as–Receiver does not become personally liable on the Bank's obligations"

when it pays them pursuant to statute. *Id.* The FDIC, it concluded, did not "give value" for the purposes of § 550(b)(1) "simply by performing its statutory duties." *Id.* at 78.

Based on the undisputed facts in this case, the bankruptcy court properly concluded that the Marquezes did not "give value" to Gonzalez in exchange for the transfer of the Residence. While they agreed to make the mortgage payments and necessary repairs, they were not bound to do so. They did not assume the mortgage and could walk away from the property without any liability for the payments or the repairs. The "freeing up" of Gonzalez's credit was a happy consequence of the deal which, like a gift, undoubtedly had "value" to Gonzalez. Such "value," however, is not what is contemplated by the bona fide purchaser defense of § 550(b)(1); it was not something the Marquezes "gave up" in exchange for the transfer.

## IV. *CONCLUSION*

I reject the contention that the form of trial used by the bankruptcy court violated the Marquezes' due process rights. I also find the bankruptcy court properly interpreted the "value" element of the good faith purchaser defense at 11 U.S.C. § 550(b), and find no error in its conclusion that the Marquezes gave no "value" in exchange for the transfer of the Residence to them from Nelly A. Gonzalez. Accordingly,

I AFFIRM the December 21, 1994 order of the bankruptcy court setting aside the Gonzalez–Marquez transfer and authorizing the trustee to recover from the Marquezes either the Residence itself or the amount of $109,586. The Clerk shall enter judgment in favor of the Appellee, with the parties to pay their own costs on appeal. The appeal is DISMISSED.

---

1. The Marquezes take the "value to the transferor" language used by the Seventh Circuit in *Bonded* out of context. The court used the language in rejecting the trustee's argument in that case that "value" in § 550(b)(1) refers to "value to the debtor," not the transferor. *See Bonded*, 838 F.2d at 896–97. Further, the language

clearly contemplates that the appropriate focus is on what a transferee gave up: "The statute does not say 'value to the debtor'; it says 'value.' *A natural reading [of § 550(b)(1) ] looks to what the transferee gave up rather than what the debtor received."* *Id.* at 897 (emphasis added).