**DAVID PEEBLES, Plaintiff**

**v.**

**IVA MOSES, Defendant**

Civil No. 639/1993

Territorial Court of the Virgin Islands

Div. Of St. Thomas and St. John

February 19, 1999

■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■

NANCY D'ANNA, ESQUIRE, Post Office Box 8330, St. John, Virgin Islands, *Plaintiff*

IVA MOSES #17 Susannaberg, St. John, Virgin Islands, *Defendant*

SWAN, *Judge*

## MEMORANDUM OPINION

Before the Court is Defendant's Motion to Deem his *pro se* letter dated May 7, 1996, as a Motion for a New Trial pursuant to Rule 59(a) of the Federal Rules of Civil Procedure. For reasons which follow, Defendant's *pro se* letter is regarded as a Motion for a New Trial; however, Defendant's Motion for a new trial is denied.

## I. FACTS AND PROCEDURAL HISTORY

On May 15, 1993, Plaintiff David Peebles was traveling west on Centerline Road on the island of St. John, when Plaintiff happened upon several cows which were obstructing the public highway. In an effort to avoid a collision with the cows, Plaintiff swerved his vehicle, thereby colliding with a rock on the side of the road. As a result of that collision, Plaintiff suffered injuries to his back and neck. Plaintiff's vehicle also sustained damage in the collision.

Approximately two months after the accident, Plaintiff brought suit against Iva Moses, contending that Defendant was the owner of the cows obstructing the public highway and that the Defendant was negligent in permitting his animals to traverse upon the public highway unattended.

The case was tried before the Court on April 22, 1996. Plaintiff was present and represented by counsel. Defendant was present, but appeared *pro se*. At the conclusion of all evidence in the case, Defendant was found negligent in causing the accident. Importantly, local law makes the act of permitting cattle or other animals to stray at large on any public road, so as to create a menace or hazard, a misdemeanor. V.I. CODE ANN. tit. 14, § 3184 (1996).

Three days after the entry of Judgment on May 7, 1996, Defendant submitted to the Court a letter ("Letter"), in which he

suggests that there was evidence not presented at trial which could have been helpful to the Court in making its ruling, and requesting that the Court review its findings based on the new evidence. Defendant, through newly acquired counsel, now moves the Court to review his letter to determine whether to regard it as a Motion for a New Trial.

As grounds for his Motion, Defendant states that as a *pro se* litigant, he was unaware of certain procedural requirements relating to the time for filing post-trial motions, that he was, never explicitly informed of the applicable time periods, and that justice requires that he be given consideration with respect to the technical requirements of the Court's procedural rules.

## II. DISCUSSION

The standard a court must apply in ruling on a motion for a new trial is well documented. Rule 59(a) of the Federal Rules of Civil Procedure authorizes this Court to grant "[a] new trial to all or any of the parties on all or part of the issues. . . (2) in an action tried without a jury for any of the reasons for which rehearings have been granted in suits in equity in the courts of the United States."

■ Typically, a new trial is granted when the verdict is against the weight of the evidence, is either excessive or inadequate, where probative evidence is newly discovered, or where conduct by the court, counsel or the jury improperly influences the deliberative process.

■ The standard to be applied when ruling on a motion for a new trial does not change when the party seeking such relief has proceeded *pro se*, at trial. It is well inscribed in American Jurisprudence that a party may represent himself in a civil proceeding. Furthermore, it is axiomatic that *pro se* litigants are commonly required to comply with standards less stringent than those applied to expertly trained members of the legal profession. *Bates v. Jean*, 745 F.2d 1146, 1150 (7th Cir. 1984). Although *pro se* litigants are given much latitude by the trial court, they are "generally [] required to inform themselves regarding procedural rules and to comply with them." *Edwards v. Immigration and Naturalization Services*, 59 F.3d 5, 8 (2d Cir. 1995).

The Court's first inquiry in ruling on a motion for a new trial is whether the motion is timely filed. A motion for a new trial must be "[filed] no later than 10 days after *entry* of the judgment." *See also Tijerina v. Plentl*, 984 F.2d 148, 150 (5th Cir. 1993). The time period for filing the new trial motion cannot be enlarged by the court. *Latham v. Dominick's Fine Foods*, 149 F.3d 673 (7th Cir. 1998); *Halicki v. Louisiana Casino Cruises, Inc.*, 151 F.3d 465 (5th Cir. 1998); *Stradley v. Cortez*, 518 F.2d 488 (3d Cir. 1975). More specifically, the ten (10) day time period is jurisdictional and cannot be extended by court order or by waiver by the parties. *United States Leather, Inc. v. H + W Partnership*, 60 F.3d 222 (5th Cir. 1995). However, where a motion is made within ten days, it suspends the finality of the judgment and the court may grant the motion after the ten-day period has expired. *Federal Deposit Insurance Corporation v. Lugli*, 813 F.2d 1030, 1033 (9th Cir. 1987).

■ Judgment in this matter was entered on May 4, 1996. Three days after judgment was entered on May 7, 1996, the Court received Defendant's Letter, which importunes the Court to reconsider the case in light of new evidence. Because the Letter was filed within the time limit prescribed for motions for a new trial, and it requests the Court to reconsider the case based on new evidence, the Court will regard the Defendant's Letter as a Motion for a New Trial, pursuant to Rule 59 of the Federal Rules of Civil Procedure.

The authority to grant a motion for a new trial is left entirely to the discretion of the trial court. *Wagner by Wagner v. Fair Acres Geriatric Center*, 49 F.3d 1002, 1017 (3d Cir. 1995); *Bass v. General Motors Corporation*, 150 F.3d 842 (8th Cir. 1998); *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998). Nonetheless, the "court's power to grant a new trial. . . is limited to those circumstances 'where a miscarriage of justice would result if the verdict were to stand'." *Olefins Trading, Inc. v. Han Yang Chem Corp.*, 9 F.3d 282, 289 (3d Cir. 1993)(quoting *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 211 (3d Cir. 1992). *See also Ball v. Interoceanica Corp.*, 71 F.3d 73, 76 (2d Cir. 1995), *cert. Denied*, 117 S.Ct. 169 (1995)(where the Federal Court of Appeals for the Second Circuit held that a motion for a new trial in a non-jury case should be based upon a manifest error of law or mistake of fact, and a judgment should not be set aside except for substantial reasons).

In his Letter, Defendant asserts that after the trial he discovered there were three road signs indicating the speed limit on Centerline Road where the accident occurred, and that the signs could have been helpful to the Court in making its decision. In his Motion to Deem his May 7, 1996 Letter as a Motion for a New Trial ("Motion") the Defendant offers additional evidence:(1) photographs depicting the scene where the accident occurred; (2) a police report with relevant statements by Plaintiff; and (3) a statement by a witness who can offer competent and relevant testimony that Plaintiff was at fault in causing the accident.

In deciding whether newly discovered evidence is sufficient to warrant a new trial, the court should consider whether the evidence: 1) existed at the time of trial, 2) had been excusably overlooked by the moving party, notwithstanding the moving party's due diligence in attempting to discover it, 3) is admissible, and 4) is likely to alter the trial's outcome. *Joseph v. Terminix Int'l Co.*, 17 F.3d 1282 (5th Cir. 1995); *Peacock v. Board of School Commissioners*, 721 F.2d 210, 213-214 (7th Cir. 1983).

First, Defendant offers photographs depicting the speed limit signs on Centerline Road as well as photographs of the scene where the accident occurred. The photographs, submitted with Defendant's Letter, were taken sometime after the April 22, 1996 trial, and nearly three years after the May 15, 1993 accident. Because newly discovered evidence must be of facts existing at the time of trial, *see National Anti-Hunger Coalition v. Executive Comm.*, 711 F.2d 1071, 1075 (D.C.Cir. 1983); and *Brown v. Pennsylvania R. Co.*, 282 F.2d 522 (3d Cir. 1960), *cert. Denied*, 81 S.Ct. 690 (1960), and the photographs now offered by the Defendant were not taken until sometime after the trial, the Court concludes that the photographs are not newly discovered evidence.

Furthermore, the speed limit signs are not facts of which the Defendant was excusably ignorant or excusably unaware. With minimum diligence, the speed limit signs could have been discovered prior to trial. While there is no evidence before the Court to support the proposition that the speed limit signs were posted on the date of the accident, the signs were in existence as of the date of the trial. Significantly, if the speed limit signs were not in existence or posted at the time of the accident, the Court must

disregard them as having no relevancy in the case. Defendant's letter states that he observed the speed limit signs upon his return to St. John on the date of, but after the trial. Thus, Defendant could have obtained photographs of the same signs prior to trial for presentation at trial. In both instances, Defendant failed to obtain the evidence prior to trial; therefore, he failed to offer them into evidence.

Second, Defendant offers a police report which he asserts contains relevant statements by Plaintiff. However, a copy of the police report was admitted into evidence as Plaintiff's Exhibit Number 2. Since the police report was introduced into evidence by Plaintiff, it is not newly discovered evidence that Defendant was unable to locate had he used due diligence. The report was available at trial for the Defendant's use, but Defendant failed to utilize the report in his defense in any meaningful manner. After trial and in consultation with an attorney, Defendant now recognizes the possible importance of the police report. Therefore, he seeks a second chance to argue his case with his newfound understanding.

Third, Defendant offers a statement by a witness who Defendant contends was with Plaintiff before the accident and who Defendant claims can offer testimony that Plaintiff was at fault in causing the accident. Defendant does not provide the Court with either the name of the witness, a specific proffer of what will be the new witness' testimony, or any information regarding why the witness is newly discovered.

■ If the witness is truly newly discovered, the Court perceives no reason why with minimum diligence, the witness could not have been discovered prior to trial. This case has been pending for three years at the time of trial and the Court gave the parties more than a month's notice of the actual trial date.[1] Therefore, Defendant had three years to investigate the matter, conduct discovery, secure all necessary witnesses, and a month's notice of the trial date to prepare for his defense at trial.

---

[1] This lawsuit was initiated on July 20, 1993 with the filing of Plaintiff's complaint. On March 18, 1996, this Court entered an Order scheduling the trial for April 22, 1996.

The Court believes that this witness is not newly discovered, and it is unclear from Defendant's moving papers, whether this witness is the same individual as the author of a letter Defendant attempted to offer into evidence during the trial. Defendant sought to offer into evidence the letter of an individual, who allegedly knew the Plaintiff well and who allegedly had information concerning the actual cause of the accident. Defendant tendered the letter because the author of the letter was off-island and unavailable to testify at trial. The Court specifically excluded the letter as being hearsay and prohibited by Rule 802 of the Federal Rules of Evidence. If the witness now offered by the Defendant is the same individual as the author of the letter Defendant attempted to introduce at trial, the witness is not newly discovered, inasmuch as the Defendant knew of the witness and the subject of the witness' proffered testimony. Moreover, Defendant conducted absolutely no discovery in the case and not even the most fundamental interrogatory. No deposition of the witness was taken, as is required if the witness was to be unavailable and outside of the jurisdiction at the time of trial. FED. R. CIV. P. 32(a)(3).

■ Furthermore, the Court finds that the evidence now offered by Defendant would not have changed the Court's decision or the outcome of the case. At trial, Defendant admitted under cross-examination by Plaintiff's counsel that his cows were on the road everyday; therefore, the cows could have been on the road on May 15, 1993, the date of the accident.

Q: Mr. Moses, do your cow — your cows are ever on the road?
A: Oh sure, yes.
Q: How often are your cows on the road?
A: Everyday.

(R. at 85-86) Additionally, Plaintiff testified under cross-examination, that there were approximately a dozen cows blocking the roadway. (R. at 62.) Defendant offered testimony that another individual kept cows in the vicinity of the accident, inferring that the cows blocking Plaintiff's lane of travel belonged to someone other that the Defendant. (R. at 73.) However, according to Defendant's own witness, the other individual only owned about

81

five (5) to seven (7) cows, (R. at 75) whereas Defendant Moses had about twenty-five (25) cows in 1993. Thus, the number of cows blocking the road, about a dozen, was greater than the number of cows owned by the only other person in the neighborhood who raised cows. There is no evidence that the other person's cows were on the roadway on the day of the accident. But, Defendant's twenty-five (25) cows were on the roadway when the accident occurred. Significantly, the Defendant testified that the accident occurred right across from his property.

> The Court: Where the accident occurred, how far is it from your property?
> The Witness: It is right across from my property.

(TR. 81) Therefore, the Court concluded that there was sufficient evidence to find that the Defendant's cows were obstructing the roadway and to find the Defendant negligent in causing the accident and Plaintiff's resulting injuries and damages.

■ Defendant chose, on his own volition, to pursue the matter *pro se.* At trial, he was unprepared and had limited knowledge of substantive or procedural law. The Supreme Court in *McNeil v. United States,* 113 S.Ct. 1980, 1984 (1993), stated "[w]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistake by those who proceed without counsel." A court is under no obligation to help a *pro se* defendant when he is presenting a case to the court. "The Constitution does not require judges or agencies for that matter to take up the slack when a party elects to represent himself. . . [and] "courts need not 'Take over chores for a pro se defendant that would normally be attended to by a trained counsel as a matter of course'." *Eagle Eye Fishing Corp. v. Dept. of Commerce,* 20 F.3d 503, 506 (1st Cir. 1994)(quoting *McKaskle v. Wiggins,* 465 U.S. 168, 183-184 (1984)).

At the beginning of the trial, the Court questioned the Defendant on two separate occasions about his decision to proceed without the assistance of counsel. The Defendant insisted on moving forward without legal representation.

> The Court: You are going to represent yourself in this matter?

Mr. Moses: Yes, your Honor.

The Court: All right. Have you ever spoken to a lawyer about this matter?

Mr. Moses: No.

The Court: Well, you should have. Anyway — well, I will go ahead and hear it today.. . . I was just curious, whether or not Mr. Moses had spoken to a lawyer, and whether or not the lawyer had given him the issues in terms of addressing the issue.

Attorney D'Anna: I wrote to him a long time explaining it but, of course, I don't represent him.

The Court: All right. Okay. You are ready?

Mr. Moses: Yes.

(Supplemental R. at 6.)

The Court: Pardon me. Just one second. I know that, Mr. Moses, this case has been pending since 1993. Am I correct that you do not intend to get a lawyer?

Mr. Moses: Yes, your honor. I did not intend to get a lawyer.

The Court: All right. And you came here without a lawyer, am I correct?

Mr. Moses: Yes, your honor.

The Court: And it's still your position that you do not need a lawyer?

Mr. Moses: Yes, your honor.

The Court: All right. Thank you very much.

(R. at 6-7.)

Defendant was adamant about proceeding without an attorney, apparently in an attempt to save money. But, the Defendant could have at least consulted with an attorney for an overview of his case. An endeavor which Defendant never undertook.

The Court must remain impartial. *See Eagle Eye Fishing Corp.*, 20 F.3d at 506. The Court must not undertake Defendant's defense because he refuses to retain an attorney or even consult with one regarding his case. *Id.* After a full trial, and an adverse judgment,

and perhaps recognizing his error in not retaining counsel, Defendant now wants another full trial. Defendant seeks a second chance to defend himself, totally oblivious to the burden a second trial and preparation for a second trial would place on the Court's and on the Plaintiff's time. The Court will eschew such a precedent, because every other litigant, especially pro se litigants, would seek the same treatment and a similar second opportunity for a trial, if the first trial results in an adverse judgment. Thus, no judgment involving *pro se* litigants would become final, absent a second trial on the merits of the suit. Moreover, the concept of *Res Judicata* could become a nullity and a meaningless concept.

## III. CONCLUSION

It is incumbent upon a defendant seeking a new trial to demonstrate that the new evidence which he offers clearly weights in favor of a new trial. *Diaz*, 46 F.3d at 495. Defendant Moses failed in this endeavor in that he failed to demonstrate that the evidence which he now offers is truly newly discovered, and had been excusably overlooked by him, notwithstanding his due diligence in attempting to discover it. Finally, the Court would be placing an undue burden on the Plaintiff if a new trial was ordered, especially after the Defendant admitted under oath that his cows were on the road everyday, and would have been on the road on the date of the accident, so as to cause the accident.

Lastly, this Court concludes that a pro se litigant shall not be allowed to exploit his *pro se* status when he voluntarily elects to proceed at trial, without the assistance of counsel, and upon receiving an adverse judgment uses his status, to provoke sympathy in an effort to be afforded a new trial. This Court favors finality to litigation following a trial. When a litigant chooses a certain course of action in a lawsuit, the litigant must be prepared to live with the consequences resulting from such course of conduct, irrespective of how unfavorable they may be. Justice is not a one-way street, but a two lane boulevard. (citation omitted).