Trustee's motion to approve the settlement must be denied.

### CONCLUSION

Therefore, for the reasons stated, the Chapter 7 Trustee's motion to approve the settlement she has reached with Defendants is denied. The court will prepare a separate order consistent with this opinion.

**In re Gregory ANDERSON and Rose Anderson, Debtors.**

**Colleen M. Olson, Chapter 7 Trustee, Plaintiff/Counter–Defendant,**

**v.**

**David A. Anderson and David Allen Anderson, Defendants/Counter–Plaintiffs.**

**Bankruptcy No. HM 04–90467.**
**Adversary No. 06–99002.**

United States Bankruptcy Court, W.D. Michigan.

Nov. 28, 2006.

if consummated, would be lawful. FED. R.BANKR.P. 9019(a) offers a bankruptcy trustee the opportunity few other parties enjoy: the ability to have a court review the propriety of his or her decision before assuming the consequences of that decision. However, that opportunity comes at the price of being told from time to time that the transaction is inappropriate regardless of the trustee's otherwise good intentions.

Robert D. Heikkinen, Heikkinen and Strisar, Marquette, MI, for Debtors.

Gregory M. Luyt, Bowerman Bowden, Clulo & Luyt PC, Traverse City, MI, Steven L. Rayman, Rayman & Stone, Kalamazoo, MI, Donald W. Bays, Marquette, MI, for plaintiffs.

## OPINION RE: TRUSTEE'S OCTOBER 30, 2006 MOTION FOR RECONSIDERATION

JEFFREY R. HUGHES, Bankruptcy Judge.

On October 30, 2006, the Chapter 7 Trustee filed a motion entitled "Trustee's Motion for Reconsideration of Order Dated October 20, 2006 Denying Trustee's Motion for Approval of Settlement." A hearing on the motion is not necessary.

The Chapter 7 Trustee's motion is precipitated by a prior motion filed by her on April 7, 2006. That motion sought the approval of a settlement that she had reached with the defendants in this adversary proceeding. The settlement contemplated the bankruptcy estate conveying to the defendants an undivided interest in hunting property that Debtors had owned pre-petition and which had become property of the estate by operation of Section 541(a)(1) of the Bankruptcy Code.[1]

---

1. 11 U.S.C. §§ 101, *et seq.* Debtors' petition pre-dates the October 17, 2005 effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. No. 109–8, § 1501(b)(1), 119 Stat. 23. However, apart from some changes in enumeration, the provisions of the Bankruptcy Code relevant to the instant case are not affected by those amendments. Therefore, for ease of reference, all citations in this opinion to the Bankruptcy Code will be to the Bankruptcy Code as amended by BAPCPA unless otherwise indicated. In addition, all references to "Section ____" will be to the relevant sections of the Bankruptcy Code unless otherwise indicated.

I did not approve the proposed settlement because it involved an unlawful act. The problem arose because Debtors had previously claimed their interest in the hunting property as exempt and the Chapter 7 Trustee had not objected. Consequently, that interest had long ago revested with Debtors by operation of Section 522(*l* ). Therefore, the settlement proposed was purporting to be something that it was not, for the defendants were in reality going to receive nothing from the bankruptcy estate in exchange for the $13,500 they were agreeing to pay the Chapter 7 Trustee in settlement.

The Chapter 7 Trustee's motion for reconsideration is brought pursuant to FED. R.BANKR.P. 9023 and FED.R.CIV.P. 59, as incorporated therein. Subsection (e) of that rule provides for the amendment of orders entered by the court. In this instance, the Chapter 7 Trustee requests only "for an order allowing reconsideration of the denial of the Chapter 7 Trustee's Motion for approval of settlement agreement." However, I read within this prayer for relief the additional request that I in fact set aside the October 20, 2006 order and that I replace it with an order approving the settlement originally presented in the Chapter 7 Trustee's April 7, 2006 motion.

▆▆▆ Motions brought under either Rule 9023(e) or Rule 59(e) are not to be freely granted.

> Alteration or amendment of a judgment under Rule 59(e) is only justified in instances where there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice. *See Gen-Corp. Inc. v. American Int'l Underwrit-*

*ers,* 178 F.3d 804, 834 (6th Cir.1999). Similarly, in non-jury cases, new trials are typically ordered under Rule 59(a) only when there has been a manifest error of law or a mistake of fact. *Ball v. Interoceanica Corp.,* 71 F.3d 73, 76 (2d Cir.1995), *cert. denied,* 519 U.S. 863, 117 S.Ct. 169, 136 L.Ed.2d 111 (1996); 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE & PROCEDURE § 2804 (2d ed.1995). Motions for reconsideration are "not an opportunity to re-argue a case" and should not be used by the parties to "raise arguments which could, and should, have been made before judgment issued." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler,* 146 F.3d 367, 374 (6th Cir.1998); *FDIC v. World Univ. Inc.,* 978 F.2d 10, 16 (1st Cir.1992).

*In re Ying Ly,* 350 B.R. 757, 759–60 (Bankr.W.D.Mich.2006).

▆▆▆ The Chapter 7 Trustee's motion for reconsideration does not offer newly discovered evidence. Nor does it identify either a clear error of law or some manifest injustice. Rather, it simply presents arguments that the Chapter 7 Trustee could have raised either at one of the two hearings that was held concerning her original motion or in the brief that she also filed.[2] Rule 9023(e) is not intended to give the aggrieved party a second bite at the apple.

Nonetheless, some of the arguments made in the Chapter 7 Trustee's motion for reconsideration deserve comment. Those arguments are:

> 1. That the settlement should be approved because it fell within the broad

---

**2.** I heard the settlement motion first on April 25, 2006 and then again on May 16, 2006. The Chapter 7 Trustee requested the second hearing so that she could file a brief regard-ing issues I had raised at the first hearing and the Chapter 7 Trustee did in fact file a seven page brief on May 12, 2006.

discretion afforded her by the business judgment rule;

2. That my interpretation of Debtors' claim for exemption in their Schedule C was in error because I did not take into consideration the actual value of the property in dispute; and

3. That the October 20, 2006 order is an inappropriate, retroactive application of the law.

■ There is no question that the business judgment rule gives a bankruptcy trustee considerable latitude in his or her observance of the duty to exercise due care. *In re Dalen,* 259 B.R. 586, 610 (Bankr.W.D.Mich.2001). However, the issue in this instance is not whether the Chapter 7 Trustee's decision to enter into the settlement is consistent with her duty to exercise due care (*i.e.,* the duty not to act negligently in administering the bankruptcy estate). Rather, the issue is whether the settlement the Chapter 7 Trustee proposes is consistent with her separate duty of obedience (*i.e.,* the obligation not to act outside of the fiduciary's permitted authority).

■ The Chapter 7 Trustee misapprehends the problem presented by the settlement she has proposed. The Chapter 7 Trustee commenced this adversary proceeding against defendants to procure the authority to sell the defendants' undivided interest in real property. 11 U.S.C. § 363(h). *See also,* Fed.R.Bankr.P. 7001(3). It is certainly within the Chapter 7 Trustee's discretion to settle that matter. However, it is the terms of the settlement that poses the problem, for the Chapter 7 Trustee's settlement contemplates conveying to the defendants property that the Chapter 7 Trustee has no authority to convey. Assume instead that the Chapter 7 Trustee had promised to convey to the defendants the Brooklyn Bridge for their money. There is no question that such a transaction would clearly benefit the bankruptcy estate. After all, the Chapter 7 Trustee would be receiving $13,500 at no cost to the estate. However, the economic benefit to be gained does not negate the reality that the Brooklyn Bridge is not the Chapter 7 Trustee's to sell. The point is that the Rule 9019(a) approval process cannot be used to countenance an *ultra vires* activity regardless of how advantageous the proposed settlement might otherwise be to the bankruptcy estate.[3]

■ The taint of fraud also requires disapproval of the settlement proposed. Nothing in the record even remotely suggests that the Chapter 7 Trustee has intentionally attempted to deceive the defendants in negotiating the settlement reached. However, the fact remains that the Chapter 7 Trustee has entered into a settlement agreement that implicitly, if not explicitly, includes representations by the Chapter 7 Trustee that the defendants will receive title to an undivided interest in the hunting property in exchange for the $13,500 they have agreed to pay. Obvious-

---

3. I *sua sponte* raised the question regarding the propriety of the settlement the Chapter 7 Trustee had reached. Taking that initiative was justified given the court's own vested interest in assuring that the order entered does not jeopardize its integrity.

It is not sufficient that all creditors and parties in interest were notified of the proposed settlement and none objected. Indeed, if the only consequence of a court approved settlement was to estop third parties from later challenging the settlement, then the trustee could accomplish essentially the same result by simply notifying all creditors and other parties in interest of the proposed settlement and hoping that none respond within the time required to object. However, when the trustee requests the court itself to approve the settlement, the trustee is also requesting that the court put its own integrity at stake.

*In re Dalen,* 259 B.R. at 609.

ly, that representation is false if my interpretation of 11 U.S.C. § 522(*l*), FED. R.BANKR.P. 4003(b) and *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) is correct.

Consequently, there is a legitimate concern that at some point in time the defendants' ownership of the interest to be conveyed could be challenged and that the Chapter 7 Trustee could in turn be accused of fraud. If this were to occur, I would fully expect the Chapter 7 Trustee to rely at that time on the same good faith arguments she is now making for entry of a Rule 9019(a) order. However, I cannot accept the risk that this court's order would also be used at that later date to validate the Chapter 7 Trustee's actions were I to approve the settlement as the Chapter 7 Trustee now requests.

The Sixth Circuit has held that a court should not issue a consent decree approving a settlement reached between parties if that settlement is illegal. *Williams v. Vukovich*, 720 F.2d 909 (6th Cir.1983).

> [A] consent decree, by its nature, is not simply a settlement between two parties. Rather, it is an order which implicitly, if not explicitly, approves a settlement which is incorporated into its provisions. Judicial approval of the parties' settlement "places the power and prestige of the court behind the compromise struck by the parties."

*In re Dalen*, 259 B.R. at 605 (quoting from *Vukovich*, 720 F.2d at 920).

*See also, U.S. v. City of Miami, Florida*, 614 F.2d 1322, 1333 (11th Cir.1980) (court holding that court approval of a consent decree should be withheld only if the proposed decree is "unconstitutional, unlawful . . ., contrary to public policy, or unreasonable . . ."); *Donovan v. Robbins*, 752 F.2d 1170, 1176 (7th Cir.1985) (court observing that "[i]f a consent decree provided that a violator could be punished by having his ears cut off, the judge could not sign it . . .").

If, as I believe, the Chapter 7 Trustee does not now have the authority to convey the undivided interest, it would be inappropriate for this court to nonetheless foster the impression that she does have that authority by approving the settlement as proposed. Similarly, it would be inappropriate for this court to issue an order which defendants themselves might use as evidence that they hold title should, for example, Debtors or their heirs at some later date contend that they in fact are the owners by operation of Section 522(*l*). Perhaps some of these concerns might be alleviated were defendants willing to still pay the $13,500 after full disclosure of the risks involved. However, nothing in the record suggests anything other than that defendants are acting under the incorrect impression that the Chapter 7 Trustee in fact has something to convey to them in exchange for $13,500. Consequently, it would be unseemly for the court to reinforce that impression by approving the settlement as requested.

The Chapter 7 Trustee also contends that I have erred by mismatching property valued at $30,000 with an exemption claimed of only $15,000. The Chapter 7 Trustee's point would be well taken had Debtors in fact set the value of their interest at $30,000 when they prepared their amended Schedule C. However, the uncontested facts are: (a) that Debtors' amended Schedule C sets the value of the undivided interest at $15,000; (b) that Debtors' amended Schedule C sets the exemption claimed in that undivided interest also at $15,000; and (c) that the interest claimed as exempt is fully exemptible at that amount. As such, the Chapter 7 Trustee could not fairly infer from this information alone that Debtors intended for the bankruptcy estate to retain ownership of the

property and that Debtors desired only to receive whatever the Chapter 7 Trustee could realize from its liquidation up to the exemptible amount. Rather, the Chapter 7 Trustee should have inferred that Debtors intended to keep for themselves ownership of their interest in the hunting property as an allowed in-kind exemption. Consequently, it was incumbent upon the Chapter 7 Trustee to act upon that inference or, at the very least, confirm that Debtors did not in fact intend to exempt the undivided interest itself.

It is regrettable that the Chapter 7 Trustee did not take the opportunity at the outset of the case to test Debtors' representation as to the value of the hunting property by securing her own independent assessment of the same.[4] However, the Supreme Court has instructed that the Chapter 7 Trustee cannot now make up for the opportunity lost.

Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality. In this case, despite what respondents repeatedly told him, Taylor did not object to the claimed exemption. **If Taylor did not know the value of the potential proceeds of the lawsuit, he could have sought a hearing on the issue, see Rule 4003(c), or he could have asked the Bankruptcy Court for an extension of time to object, see Rule 4003(b).** Having done neither, Taylor cannot now seek to deprive Davis and respondents of the exemption.

*Taylor v. Freeland & Kronz*, 503 U.S. 638, 644, 112 S.Ct. 1644, 1648, 118 L.Ed.2d 280 (1992) (emphasis added).

*In re Heflin*, 215 B.R. 530 (Bankr. W.D.Mich.1997), distinguished *Taylor* in part based upon the fact that the debtor in that case had not disclosed the value of the lawsuit in which the exemption was claimed; rather, the debtor had listed its value as "unknown."[5] However, this distinction does not strengthen the Chapter 7

---

4. Of course, the dispute as to the property's "true" value would not have ended even had the Chapter 7 Trustee procured the market assessment at the outset of the case, for that assessment was no more dispositive of the property's value than the assessment Debtors had offered in their amended Schedule C. Both are simply opinions. A separate market assessment of $30,000 would have certainly justified the Chapter 7 Trustee objecting to the in-kind exemption of the property. However, the filing of the objection would not have resolved the dispute raised. Rather, the question of whether the property interest was worth $15,000, $30,000, or some other amount would have remained unanswered until the court itself had adjudicated that issue.

5. *Heflin* also distinguished *Taylor* because the debtor in *Taylor* did not specify a statutory basis for the exemption she claimed whereas the debtor in *Heflin* did. However, there is no indication in *Taylor* that the Court would have ruled differently had there not been this additional deficiency in the exemption claimed by the *Taylor* debtor. Perhaps it is true that the trustee in *Taylor* would have offered a different excuse for not filing a timely objection if the only deficiency had been the *Taylor* debtor's failure to ascribe values to the asset identified and the exemption claimed. Perhaps the trustee in *Taylor* would have even conceded his error under these different facts.

However, what is certain in *Taylor* is that the Court's pronouncement therein is not driven by either of the distinctions the *Heflin* court found. Specifically, the Court categorically rejected the trustee's contention in that case that there can be exceptions to the claims deadline imposed by Rule 4003(b) for the filing of objections to exemptions claimed. There is no reason to believe that the Court would have varied its decision an iota had the *Taylor* trustee focused on lack of valuation instead of lack of statutory basis as his excuse for not complying with that rule. Similarly, there is no reason to believe that the Court would have been any more sympathetic to the justifications offered by the trustee in *Heflin* and now by the Chapter 7 Trustee herein for ignoring the Rule 4003(b) deadline.

Trustee's argument; it weakens it. In *Taylor*, the trustee would have been able to at least argue that the debtor's assignment of an unknown value to the lawsuit permitted him to assume that the actual value was in fact greater than whatever the debtor was allowed as an exemption and that, therefore, the debtor intended to exempt only the amount permitted under the law. Indeed, a lawsuit is not even subject to valuation, at least not in the traditional sense. Granted, the amount that may ultimately be recovered is subject to risk assessment and that risk assessment would be relevant to a potential disagreement between debtor and the trustee as to whether to settle or to proceed further. However, most lawsuits involve the recovery of money and money, of course, requires no valuation. A dollar is a dollar. Consequently, the trustee in *Taylor* had even more reason to assume that the debtor intended to exempt only whatever dollar amount was recovered up to the maximum amount allowed.

In contrast, the Chapter 7 Trustee here has no basis to make any such assumption. Debtors unequivocally offered their opinion in their Schedule C that the value of the hunting property was the same as the exemption they were claiming. Moreover, unlike *Taylor*, the property in question was subject to valuation and, therefore, it follows that Debtors' opinion as to its value was not necessarily the actual value that the Chapter 7 Trustee might ultimately realize were she to liquidate the same. Consequently, the trustee in this instance should not have forgone making further inquiry at the outset of Debtors' Chapter 7 proceeding. The increased value that the Chapter 7 Trustee subsequently discovered through her own real estate broker's assessment of the property is the same value that she could have discovered then. To paraphrase *Taylor*, if the Chapter 7 Trustee had doubts about the value given by Debtors to the hunting property or Debtors' apparent intention to exempt that property in-kind, she could have sought a hearing on the issue, or she could have asked the bankruptcy court for an extension of time to object within the time proscribed by Rule 4003(b). Having done neither, the Chapter 7 Trustee cannot now seek to deprive Debtors of the exemption. *Taylor, Id.*

The Chapter 7 Trustee further suggests in this last argument that a debtor is never entitled to claim as exempt the property itself but is instead always subject to a subsequent contention by the bankruptcy trustee that there is non-exempt equity in the property at issue. However, even *Heflin* acknowledges that a debtor may take so-called in-kind exemptions of property under Section 522.

> If a debtor intends to fully exempt a particular piece of property in its entirety, regardless of its value, then the debtor should unambiguously express this intention in his schedules. Where the debtor makes a clear manifestation of his intent to seek an unlimited exemption in a specific piece of property, then the trustee has ample notice and can either file an objection or seek an extension of time in which to conduct further investigation. If the trustee fails to object, or fails to obtain a timely extension, then the trustee cannot subsequently challenge the validity of the exemption.

*In re Heflin*, 215 B.R. 530, 536 (Bankr. W.D.Mich.1997).

My disagreement with *Heflin* lies only with respect to what a debtor must do to manifest that intent so as to compel the trustee's objection of the exemption in-kind.

Finally, the Chapter 7 Trustee contends that my ruling in this instance is a retroactive application of the law and that she is

being penalized as a result. Put differently, the Chapter 7 Trustee argues that she was justified in relying upon the distinction *Heflin* made with respect to *Taylor* when she elected not to object to Debtors' exemption in the hunting property and that it is therefore inappropriate for me to now undermine that reliance through this decision. However, the Chapter 7 Trustee affords too much weight to *Heflin.* I and my colleagues endeavor to integrate our decisions with prior decisions of this court so as to promote uniformity and predictability within the district. However, we are all ultimately bound to enforce the Bankruptcy Code. Each bankruptcy judge strives to interpret the Code and its attendant rules as best as he or she can, mindful, of course, that the prior interpretations of the Supreme Court and the relevant court of appeals must take precedence. However, courts of equal rank are not required to follow the decisions of their counterparts.

> A court is not irretrievably bound by its own precedents, but in the interests of uniformity, stability, and certainty in the law, will follow the rule of law established in earlier cases unless clearly convinced that the rule was originally erroneous or is no longer sound because of changed conditions, and that more good than harm would result from a departure from precedent. 1B Moore's Federal Practice P 0.402(3.–1) (1965 & Supp. 1980–81).

*Mueller v. Allen,* 514 F.Supp. 998–99, 1000–001 (D.Minn.1981); *see also, Threadgill v. Armstrong World Industries, Inc.,* 928 F.2d 1366, 1371 (3rd Cir.1991); *Colby v. J.C. Penney Co.,* 811 F.2d 1119, 1124 (7th Cir.1987).

Consequently, the Chapter 7 Trustee's argument that I am applying the law retroactively or unjustly is unfounded. The Chapter 7 Trustee's contention that she has been acting in good faith reliance upon *Heflin* does not change the fact that, in my opinion, the Chapter 7 Trustee has nothing now to convey to defendants because of Section 522(*l*) and its interpretation by the Supreme Court. Put simply, I cannot in good conscience give my approbation to the settlement proposed because of a past interpretation of the pertinent law when I am clearly convinced that a different interpretation is required.

## CONCLUSION

For the reasons stated herein, the Chapter 7 Trustee's motion to reconsider the October 20, 2006 order is denied. A separate order consistent with this opinion will enter.